

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AUBREY and JESSE LANE, | § § § | BRODIE, J. |
| Plaintiff, | § § | |
| vs. | § § | COMPLAINT & JURY TRIAL DEMAND |
| AMERICAN AIRLINES, INC. | § § | |
| Defendant | § § | POLLAK, M.J. |

TO THE HONORABLE COURT:

Plaintiffs, AUBREY LANE and JESSE LANE, by their attorneys James McDonough, Chris Cowan, and Margaret Foley, as and for their complaint against Defendant AMERICAN AIRLINES, INC., allege the following upon information and belief:

1. **Jurisdiction.** The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sec. 1331 and 1332, insofar as there exists complete diversity of citizenship of the parties and the amount in controversy exclusive of interest and costs, exceeds $75,000.00.

2. At all times material hereto, Plaintiffs were residents of Colorado and Defendant was incorporated in a State other than Colorado and have their principal place of business outside of Colorado.

3. **Venue** is proper in this district pursuant to 28 U.S.C. Sec. 1391, in that Defendant AMERICAN AIRLINES, INC. has offices and transacts business within the Eastern District of New York, operating regular commercial flights from its assigned terminal at New York's John F. Kennedy International Airport. Defendant AMERICAN AIRLINES,

INC. regularly and systematically conducts business, solicits business, and earns substantial revenue from business conducted within this district. Moreover, events contributing to the causes of action and damages post-assault occurred in this district.

4. **Parties.** Plaintiffs AUBREY and JESSE LANE are citizens of the State of Colorado and reside therein at 1980 Diplomat View, Unit 1814, Colo Springs, Colorado 80905.

5. Upon information and belief, Defendant AMERICAN AIRLINES, INC. is a foreign corporation authorized to do business in the State of New York, with a principal executive office located at 4333 Amon Carter Boulevard, MD5675, Fort Worth, Texas 76155.

6. **Facts.** Upon information and belief, Defendant AMERICAN AIRLINES, INC. was and is a common carrier engaged in the business of transporting passengers for hire by air and operates an extensive international and domestic network of flights.

7. Upon information and belief, Defendant AMERICAN AIRLINES, INC. employs a flight crew responsible for the safe and secure operation of its flights as well as the safety and well-being of its passengers.

8. On June 16, 2017, Defendant AMERICAN AIRLINES, INC. operated and controlled a certain aircraft, designated as American Airlines Flight 1280 (the "subject aircraft"), from Phoenix Sky Harbor non-stop to New York's John F. Kennedy International Airport (JFK) (the "subject flight"). The flight had a scheduled departure of 9:50pm from Phoenix Sky Harbor on June 16, 2017 with an arrival at JFK at 5:40am on June 17, 2107. Upon information and belief, this flight departed and arrived on schedule and is referred to as a "red-eye" flight due to its scheduled night time departure and early morning arrival.

9. The subject flight was conducted on an aircraft owned, leased, operated, staffed, or otherwise controlled by the Defendant AMERICAN AIRLINES, INC.

10. AMERICAN AIRLINES, INC. was responsible for the training, management, supervision, and/or control of its flight crew aboard the subject flight, including but not limited to the crew's adherence to their own internal standard safety policies and protocol as well as federal policies, regulations, guidelines and standards.

11. Plaintiff AUBREY LANE was a fare-paying passenger lawfully aboard the subject flight and assigned window seat 12A. which was a preferred seat under Defendants seat pricing structure.

12. While aboard the subject aircraft, Plaintiff AUBREY LANE was sexually assaulted in the bathroom by an intoxicated passenger assigned middle seat 12B.

13. Upon boarding the subject flight, Passenger 12B stumbled aboard the plane three minutes prior to the cabin doors closing in an obvious intoxicated state, with glazed eyes and fumbling in the aisle trying to find his seat according to an eyewitness in aisle seat 12C. *See*: Exhibit A, p.2.

14. In accordance with American Airline's own internal safety guidelines/policies/regulations and two separate Federal Aviation Administration directives, Passenger 12B should not have been allowed to board the subject flight:

    a. Title 14 Code of Federal Regulations §91.17(b) - *Alcohol or Drugs*, prohibits, "[e]xcept in an emergency, no pilot of a civil aircraft may allow a person who appears to be intoxicated or who demonstrates by manner or physical indications that the individual is under the influence of drugs (except a medical patient under proper care) to be carried in that aircraft."

    b. Title 14, Code of Federal Regulations §121.575(c) -- *Alcoholic Beverages*, "[n]o certificate holder may allow any person to board any of its aircraft if that person appears to be intoxicated."

15. Once 12B was seated on the subject aircraft, he admitted to 12C that he had been drinking for hours and needed another drink. Prior to takeoff he called a flight attendant to order a

drink. The order was declined until cabin beverage service, wherein according to 12C, he ordered two vodkas, a Coke, and a beer. Passenger 12C, in a statement to American Airlines, stated, "this amount of alcohol served at one time to any person who is already visibly intoxicated is irresponsible." *See*: Exhibit A, p. 2. A short time later, passenger 12B once again ordered and was served by the flight crew two vodkas, a coke and a beer. This amounted to serving an already visibly intoxicated passenger four vodkas and two beers in a matter of a few hours.

16. American Airlines had a duty to refuse service to intoxicated passenger 12B on the subject flight under Title 14, Code of Federal Regulations §121.575(a) -- *Alcoholic Beverages*. It states:

    a. "No person may drink any alcoholic beverage aboard an aircraft unless the certificate holder operating the aircraft has served that beverage to him. (b) No certificate holder may serve any alcoholic beverage to any person aboard any of its aircraft who -- (1) Appears to be intoxicated;"

17. *The Guidance on Unruly Passenger Prevention and Management*, published by the International Air Transport Association in 2015 foreshadowed many elements of this incident on the subject flight at pp. 18-19:

    ***3.4.1.1 Alcohol Policy.*** An intoxicated passenger can become a danger to themselves and others on board the aircraft. . .. Tolerating intoxicated passenger behavior at or in the check-in counter, terminal building, lounges, the gate and on board the aircraft can undermine the airline's goal to offer safe, secure and superior passenger service to all passengers on board, as well as the goal of a safe work environment for crew members.

    Airlines should authorize their ground staff and crew members to deny boarding to passengers where there are reasonable grounds to believe that their faculties are impaired by alcohol to an extent that will present a hazard to the aircraft, to persons on board (crew or passengers) or to the passengers themselves.

    Service of alcoholic beverages should be carried out in a reasonable and safe manner. This could include tactfully refusing to (further) serve a passenger alcohol.

18. Passenger 12C's statement to American Airlines about the subject flight described how she had warned the flight crew of this unruly passenger and that the needed intervention to protect the safety and well-being of Plaintiff was shrugged off by the cabin crew even when American Airlines was specifically notified by 12C:

> From the beginning of the flight, Aubrey had been talking in a friendly manner with him, but as drinks were consumed, the conversation got louder, more erratic, and more uncomfortable. Even with headphones in, I heard every word, but my annoyance turned to concern when I started hearing him say how pretty she was, how lucky her husband was to have such a 'bangin' wife' and how 'what happens on vacation stays on vacation.' As I heard her refute each claim and attempt to redirect his comments to another topic, I took out my headphones. While Aubrey had been drinking, she clearly was not interested in pursuing this man in 12B, but over time he began to move closer to her, grab her face and kiss her, which she would push him off and say that "couldn't happen." He then began to tell her he was in love with her, to which she retorted, "That's impossible! You can't fall in love with someone in one night!" Which followed a shouting match of "Yes you F*ing can!" "No f*ing way!" etc. This drew a lot of attention, but when I alerted the flight attendant as he walked by, he shrugged and said, "Well they are drinking..." and walked away.

*See*: Exhibit A, pp. 2 - 3.

19. The International Air Transport Association's 2015 *Guidance on the Safe Service of Alcohol on Board* provides reasonable procedures for the cabin crew to follow -- but which the American Airlines crew on flight 1280 did not. The *Guidance on the Safe Service of Alcohol* provides "considerations and techniques for the safe service of alcohol on board." American Airlines 1280 utterly ignored the considerations and techniques leading to the assault of Aubrey Lane. The International Air Transport Association suggests the following:

- **Engage, assess and identify**: Engage with the passengers and use the Traffic Light System in order to assess and identify potential risk cases, starting from the first greeting, during the delivery of service, and monitor the cabin.

- **Count drinks**: If possible, when serving alcoholic beverages, keep track of the number of drinks a passenger has consumed within a certain period of time. (Note that this technique may not be possible or feasible on multi cabin crew operations on larger aircraft, however, communication amongst cabin crew can help with tracking.)

- **Communicate and document**: Communicate amongst the cabin crew regarding which passenger(s) may be of concern due to excessive drinking. Document this information either on a sheet of paper or on a company issued electronic device. This tracking could be used in subsequent reporting if the passenger becomes unruly.

. . .

- **Know when to stop service**: Discuss with the Senior Cabin Crew Member and fellow cabin crew on when and how to cease service if required to do so. It is also important to always advise the PIC [pilot in command] when a cease of alcoholic beverage service decision will be actioned.

- **If a passenger warning is required**: Make use of the airline's unruly passenger warning card to mitigate and manage incidents requiring this level of intervention. Always advise and consult with the PIC if a warning card will be issued. It is also recommended to have another crew member present to bear witness during the process of issuing a warning card.

- **Common sense**: Use common sense when serving beverages: count beverages, assess passenger behavior, and cease service when appropriate in order to maintain control of the cabin environment.

20. The Traffic Light System referenced by the Association identifies considerations and cabin crew responses that were again ignored on the subject flight and lead to the sexual assault of Aubrey Lane:



| The Traffic Light System | | |
|---|---|---|
| **Green Behaviors:** | **Yellow Behaviors:** | **Red Behaviors:** |
| • Sociable<br>• Relaxed<br>• Comfortable<br>• Happy | Reduced inhibitions<br>Impaired judgment<br>Talking or laughing louder than normal<br>Being overly friendly<br>Arguing or baiting<br>Increased use of foul language<br>Increasing alcohol consumption<br>Careless with money | • Moving in slow motion<br>• Slow to respond to questions<br>• Glassy-eyed<br>• Losing train of thought<br>• Making irrational statements<br>• Spilling drinks<br>• Walking awkwardly<br>• Stumbling or falling down<br>• Unable to sit up straight |
| **Consideration:** | **Consideration:** | **Conclusion:** |
| *The passenger has probably had little or nothing to drink.* | *The passenger is starting to show signs of alcohol intoxication.* | *The passenger has had too much to drink.* |
| **Response:** | **Response:** | **Response:** |
| 1. Alcohol service may be safely provided.<br>2. Maintain situational awareness for any changes to passenger behavior. | 1. Alcohol service should be slowed or stopped to prevent the passenger from reaching the red level.<br>2. Offer the passenger food and non-alcoholic beverages to slow down the alcohol absorption.<br>3. Notify other cabin crew, Senior Cabin Crew Member and the flight crew of passenger behavior. | 1. Tactfully and discreetly refuse to serve the passenger any more alcohol. Offer the passenger non-alcoholic beverages instead.<br>2. Notify other cabin crew, Senior Cabin Crew Member and the flight crew that the passenger appears to be intoxicated. |

21. There is an alarming rise of sexual assault on flights. Indeed recently, on April 26, 2018, the U.S. Department of Justice's Federal Bureau of Investigation alerted the public about the rising incidents of sexual assault aboard aircraft.[1] FBI Special Agent David Gates, who is based at Los Angeles International Airport (LAX) and regularly investigates these cases, stated that "even one victim is unacceptable. He reported, ". . . seeing more reports

---

[1] https://www.fbi.gov/news/stories/raising-awareness-about-sexual-assault-aboard-aircraft-042618

of in-flight sexual assault than ever before." In fiscal year 2014, 38 cases of in-flight sexual assault were reported to the FBI. In 2017, that number increased to 63 reported cases. "It's safe to say that many incidents occur that are not reported," said Gates.

22. Caryn Highley, a special agent in the FBI's Seattle Division who investigates crimes aboard aircraft, further stated, "Unfortunately, people don't think things like this happen on airplanes." She continued, "There is a perception on an airplane that you're in a bubble of safety." Yet the FBI's April 26, 2018 report captured Aubrey Lane's ordeal, stating, "[b]ut particularly on overnight flights, where people may consume alcohol or take sleeping pills, and a dark cabin and close-quarter seating can give the perception of privacy and intimacy, offenders are tempted by opportunity."

23. In most cases, when assaults are reported to the flight crew, law enforcement on the ground will be notified and will be waiting to respond when the plane lands. If law enforcement is not able to respond on the ground, victims are encouraged after landing to contact the nearest FBI office. If alerted in advance, FBI agents can be on hand when the plane lands to conduct interviews and take subjects into custody. FBI victim specialists can respond as well, because victims of federal crimes are entitled by law to a variety of services. "It doesn't matter when you report an in-flight sexual assault—we take it seriously, and we will pursue it," Gates said. "But after the fact, these cases are much more difficult to prove."

24. Investigators point out that offenders take advantage of the fact that some victims might not report an incident because they are embarrassed, don't want to cause a scene, or try to convince themselves the assault was accidental.

25. "These are not accidents," Gates said. "We see the same pattern of behavior over and over again."

26. This problem has not gone unnoticed by the airlines and their flight attendants. "One in five flight attendants has witnessed a passenger being assaulted or had an assault reported to them, according to a 2017 survey of nearly 2,000 flight attendants."[2] However, the vast majority of flight attendants have no specific training regarding sexual assault, the survey found.[3]

27. **Negligence Cause of Action.** Knowing the clear dangers of intoxication and the sexual assault threats especially on red eye flights, American Airlines offered no protection to Aubrey Lane, nor provided any of the enhanced common carrier duties, despite the verbal warnings of Passenger 12C and the obvious obnoxious, aggressive, threatening and intoxicated behavior of Passenger 12B.

28. Passenger 12B should never have been allowed to board this flight given his visible intoxication. First, the American Airlines gate agents failed to recognize the dangers 12B posed to the safety of the crew and passengers and allowed 12B to board. Second, the American Airlines flight crew failed to take proper steps to recognize 12B's visible intoxication or just ignored his visible intoxication and allowed passenger 12B to then find his seat. This failure on the part of the American Airlines ground and flight crew was negligent and this negligence was a proximate cause of the Plaintiff's injuries and damages as alleged below.

---

[2] Paul, Kari, #MeToo reaches 35,000 feet as passengers and flight attendants speak out, https://www.marketwatch.com/story/the-metoo-movement-has-now-reached-35000-feet-2018-05-23, May 28, 2018 12:29 p.m. ET.
[3] *Id.*

29. In addition to the negligence as alleged in Paragraph 28 above, American Airlines continued to over-serve Passenger 12B with alcohol even as he became increasingly more intoxicated, belligerent and dangerous to Plaintiff, AUBREY LANE.

30. Plaintiffs, AUBREY and JESSE LANE, were harmed due to the negligence, careless and/or recklessness of the defendant American Airlines, Inc. its agents, servants and/or employees.

31. As a common carrier and/or commercial airline carrier, Defendant AMERICAN AIRLINES, INC. owed a duty of care to its passengers, including Plaintiff, AUBREY LANE, to ensure safe travel. As an air carrier, Defendant AMERICAN AIRLINES, INC. also owed regulatory duties to ensure safe travel of its passengers. Defendant AMERICAN AIRLINES, INC. breached the foregoing duties of care owed to Plaintiffs as follows:

   a. In particular, Plaintiff, AUBREY LANE was physically and sexually assaulted due to American Airline's actions and inactions which contributed to the assault;

   b. Defendant AMERICAN AIRLINES, INC. allowed a visibly intoxicated Passenger 12B to board the aircraft in violation of Title 14 Code of Federal Regulations §91.17(b) and §121.575(c);

   c. Defendant AMERICAN AIRLINES, INC. continued to serve alcohol to Passenger 12B in violation of Title 14, Code of Federal Regulations §121.575(a), as well as the International Air Transport Association's *Guidance on Unruly Passenger Prevention and Management* and *Guidance on the Safe Service of Alcohol on Board*;

    d. Defendant AMERICAN AIRLINES, INC. failed to fulfill its regulatory duties as described above;

    e. Defendant AMERICAN AIRLINES, INC. ignored the warning signs of sexual assault, drunkenness, and the threat posed by Passenger 12B, even after the flight crew was directly informed of Passenger 12B's behavior and the threat he posed by Passenger 12C;

    f. Defendant AMERICAN AIRLINES, INC. failed to properly train its cabin crew on the subject flight to contend with drunk passengers, such as Passenger 12B, as well as to protect passengers from sexual assault.

    g. Defendant AMERICAN AIRLINES, INC. failed to properly train its ground crew at Phoenix Sky Harbor Airport to contend with drunk passengers, such as Passenger 12B, and to refuse them passage in order to protect passengers from sexual assault or other violent crimes.

32. **Breach of Contract Cause of Action.** As a common carrier transporting passenger for a fee, Defendant AMERICAN AIRLINES, INC. contracted with its passengers, including Plaintiff, to provide reasonable safe and secure air transportation.

33. Pursuant to its contractual obligations, including express and implied warranties, Defendant AMERICAN AIRLINES, INC. had a duty to reasonably monitor the behavior and condition of its passengers in order to protect its crew and passengers. Additionally, Defendant AMERICAN AIRLINES, INC had a duty to properly train and instruct its ground and flight crew on the procedure for identifying visibly intoxicated passengers, denying them the opportunity to board a flight as well as the safe serving of alcohol to its passengers.

34. Defendant, AMERICAN AIRLINES, INC. failed to deny boarding to visibly intoxicated Passenger 12B in violation of Title 14 Code of Federal Regulations §91.17(b) and §121.575(c) as well as their internal policies and procedures in their commitment to providing a safe travel experience for their customers.

35. Defendant, AMERICAN AIRLINES, INC. continued to serve alcohol to Passenger 12B in violation of Title 14, Code of Federal Regulations §121.575(a), as well as the International Air Transport Association's *Guidance on Unruly Passenger Prevention and Management* and *Guidance on the Safe Service of Alcohol on Board* as well as their internal policies and procedures in their commitment to providing a safe travel experience for their customers.

36. Defendant AMERICAN AIRLINES, INC.'s failures to perform pursuant to its contractual obligations, including express and implied warranties, and its contract for carriage, resulted in Plaintiffs' severe mental, emotional, physical, and psychological injuries, and resulting expenses, losses and damages, the amount of which is undetermined at this time.

37. **Punitive Damages Cause of Action.** Defendant, AMERICAN AIRLINES, INC. was aware of the likelihood of sexual assault upon its passengers occurring on late, red-eye flights, Additionally, Defendant AMERICAN AIRLINES, INC. was aware that the likelihood of allowing drunk passengers to board and the continuing to over-serve its passengers who exhibit the warning indicators from its International Air Transport Association's *Guidance on Unruly Passenger Prevention* and *Management and Guidance on the Safe Service of Alcohol on Board* put passengers such as Plaintiff, Aubrey Lane at an increased risk of being assaulted.

38. Defendant AMERICAN AIRLINES, INC. was aware of increasing incidents of sexual assault on board commercial aircraft but did not offer training to its cabin crew of the dangers and warning signs to protect its passengers.

39. Defendant AMERICAN AIRLINES, INC. was aware or should have been aware of the intoxicated state of Passenger 12B on the subject flight and therefore breached the foregoing duties of care owed to Plaintiffs as follows:

    a. when its ground crew allowed 12B to board in an intoxicated state

    b. when its flight crew allowed 12B to take his seat in an intoxicated state;

    c. when 12B requested to be served alcohol prior to take take-off;

    d. when 12B ordered and was served two vodkas and a beer when beverage service was started when he was in an obvious intoxicated state:

    e. when 12B subsequently ordered and was served the same two vodkas and a beer a short time later;

    f. when 12B was becoming louder, more vulgar and more belligerent as the flight continued; and

    g. failure to act in a reasonable manner when directly warned by passenger 12C of the danger 12B posed to Plaintiff, AUBREY LANE.

40. Defendant AMERICAN AIRLINES, INC.'s actions and omissions constituted willful or wanton negligence, and/or recklessness, and/or manifested a conscious disregard and willful indifference to the safety of its passengers, and /or conduct so reckless as to amount to such disregard.

41. Defendant AMERICAN AIRLINES, INC.'s willful, wanton and/or reckless conduct was the direct and proximate cause of the behavior leading to and sexual assault of Plaintiff

AUBREY LANE, and the resulting injuries and damages suffered by Plaintiffs. By reason of the foregoing, Defendant AMERICAN AIRLINES, INC. is liable to Plaintiffs for punitive damages in a sum to be determined by a jury at trial.

42. **Loss of Consortium Cause of Action.** Plaintiffs AUBREY and JESSE LANE are, and at all relevant times were, married.

43. Plaintiff JESSE LANE has suffered, and will continue to suffer, loss of consortium, including loss of martial companionship, society, affection, support, services, assistance, conjugal fellowship, and other physical, emotional and psychological harm inflicted upon the martial relationship as a result of the failures and breaches by Defendant AMERICAN AIRLINES on Flight Number 1280.

44. **Damages.** As a result of said negligence, Plaintiffs were injured.

45. As a result of said negligence, Plaintiffs were seriously injured.

46. As a result of said negligence, Plaintiffs were permanently injured.

47. As a result of said negligence, Plaintiffs suffered great pain, agony and mental anguish, and in the future shall continue to suffer from same.

48. As a result of said negligence, Plaintiffs suffered economic loss and, in the future, shall continue to suffer from same.

49. As a result of said negligence, Plaintiffs were forced to expend sums of money on medical treatment and in the future shall continue to expend money on same.

50. As a result of said negligence, Plaintiffs were deprived of their enjoyment of life, pursuits and interests and in the future shall continue to be deprived of same.

51. As a result of said negligence, Plaintiffs' marriage was impacted and a loss of consortium occurred and, in the future, shall continue to occur. Plaintiff JESSE LANE is entitled to

an award for past and future loss of consortium, including loss of martial companionship, society, affection, support, services, assistance, conjugal fellowship, and other physical, emotional and psychological harm inflicted upon the martial relationship as a result of the failures and inaction of Defendant AMERICAN AIRLINES on Flight Number 1280.

52. As a result of the foregoing, Defendant is liable to pay full, fair and reasonable damages to Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendant AMERICAN AIRLINES, INC. in an amount to be determined at trial, together with interest, costs and disbursements of this action.

## JURY DEMAND

Plaintiff demands a jury of eight (8) persons for all claims stated.

Dated: Thursday, October 18, 2018
Durango, Colorado
/s/ James C. McDonough
James McDonough, #48462
Chris Cowan, #48434
Margaret E. Foley, #40960
Downs, McDonough & Cowan, LLC
2051 Main Ave.
Durango, CO 81301
Office No.: (970) 247-8020
Fax No.: (970) 247-8877
E-mail: james@swcolaw.com
E-mail: chris@swcolaw.com
E-mail: meg@swcolaw.com

# EXHIBIT A

**From:** "A█████████. (NY) (FBI)" <█████████@fbi.gov>
**Date:** June 25, 2017 at 12:55:23 PM MST
**To:** J█████████████████@gmail.com>
**Subject: Re: Negligence of Passenger Safety on American Airlines Flight**

Thank you


Cell
Ofc

-------- Original message --------
**From:** J█████████████████@gmail.com>
**Date:** 6/25/17 3:38 PM (GMT-05:00)
**To:** "A█████████. (NY) (FBI)" <█████████@fbi.gov>
**Subject: Fwd: Negligence of Passenger Safety on American Airlines Flight**

1

---------- Forwarded message ----------
J█████████████████████████@gmail.com>
Date: Sat, Jun 24, 2017 at 6:42 AM
Subject: Negligence of Passenger Safety on American Airlines Flight
To: ████████@aa.com, ████████████@aa.com, ████████@aa.com

Mr. Parker, Mr. Bentel and Mr. Philipovitch,

I feel it is my responsibility to address a serious issue (or series of issues) on a recent flight where flight crew, including the pilot, jeopardized the safety and dignity of its passengers.

On the evening of Friday, June 16 at 9:55pm, American Airlines Flight 1280 left Phoenix Sky Harbor on a direct flight to JFK New York. I, traveling alone, was in the aisle seat 12C, and a woman in her early 30's, Aubrey (I don't know her last name), was in the window seat 12A. Up until 3 minutes prior to doors closing, there was no passenger 12B. However, minutes before takeoff, stumbling in comes a man, mid-30's, strong build, with glazed eyes. He fumbled in the aisle, struggling to find his seat, and once seated, he immediately confessed that he had been drinking for hours, that he was very nervous to fly and that he needed a drink. We had yet to take off, and he was already buzzing for a flight attendant to place a drink order, which the flight attendant redirected to wait until beverage service. This man was not fit to fly, but yet American Airlines allowed him to fly.

As the doors closed and the plane moved to take-off position, his phone rang. Instead of ignoring it, or turning his phone off, he answered and proceeded to have a shouting conversation on speaker phone for over 4 minutes. Every passenger's head in the surrounding 5 rows was turned, yet the female flight attendant, walking down the aisle to check seatbelts and floor bags, completely neglected to tell him to turn it off.

Up until this point, the man was unpleasant and nervous, but nothing more than a nuisance. However, once beverage service started, he began to try to stand in his seat to get the flight attendant, who wasn't yet at our row, to serve him. His order? Two vodkas, a coke and a beer. I am unclear if American Airlines has an over-serving policy, but to me, this amount of alcohol served at one time to any person who is already visibly intoxicated is irresponsible. Aubrey, in 12A, had one drink.

From the beginning of the flight, Aubrey had been talking in a friendly manner with him, but as drinks were consumed, the conversation got louder, more erratic, and more uncomfortable. Even with headphones in, I heard every word, but my annoyance turned to concern when I started hearing him say how pretty she was, how lucky her husband was to have such a 'bangin' wife' and how 'what happens on vacation stays on vacation.' As I heard her refute each claim and attempt to redirect his comments to another topic, I took out my headphones. While Aubrey had been drinking, she clearly was not interested in pursuing this man in 12B, but over time he began to move closer to her, grab her face and kiss her, which she would push him off and say that "couldn't happen." He then began to tell her he was in love with her, to which she retorted, "That's impossible! You can't fall in love with someone in one

2

night!" Which followed a shouting match of "Yes you F*ing can!" "No f*ing way!" etc. This drew a lot of attention, but when I alerted the flight attendant as he walked by, he shrugged and said, "Well they are drinking…" and walked away.

About 2 hours into the flight, 12B got up to go to the bathroom. He was gone for at least 5 minutes, so Aubrey decided, since he was up already, she would go ahead and go to the bathroom as well. This is where my account is insufficient, as I was not in the bathroom. However, I did use this time to alert another flight attendant, the shorter male in the back cabin, that not only was 12B drunk and making others feel uncomfortable, something wasn't quite right with the way he was acting towards Aubrey. I said that I didn't know either of them, but I knew enough to know that they didn't know each other either, and the behavior displayed was very off for people who just met. He said he would keep an eye on the situation.

What I noticed at the time was that Aubrey returned first, very quiet (which was unlike her) and she sat down and curled up with her back to me. 12B then returned. He kept trying to snuggle Aubrey, lean on her, get her to kiss him, to which she remained turned away. He then turned to me and said "She's tired" with a look.

Over the next hour, 12B became more agitated, pestering Aubrey for her attention. She reluctantly responded, but somberly, as opposed her previously chipper responses. I chalked it up to the fact that the drink had made her tired, and it was a red-eye flight, and she had entertained 12B enough. 12B was jittery and kept expanding the presence of his arms and legs into my seat area, and I wanted nothing more than to get away from him. He also started to say derogatory things to Aubrey due to her ignoring him, calling her a bitch and "punta".  His nerves culminated in dropping his beer off his tray… landing on me and my seat. I immediately jumped up as my seat was now drowning in a pool of beer. The shorter male flight attendant immediately guided me to another seat four rows back. At this time, I instructed the same flight attendant, "The girl in 12A is not safe to be left alone with 12B. You need to move her now."

Aubrey was moved two rows behind me, and as I had not been able to inform her that I told the attendant to move, she started asking loudly why she was being moved, and what was going on. The female flight attendant came back and began to yell at her, telling her to "sit down and shut up". Aubrey responded to this, and the altercation slightly escalated (specific words were out of my ear's reach) before the flight attendant walked away.

Upon exiting the plane, I found myself just a few positions in front of Aubrey. As we stepped off the plane, I heard the female flight attendant tell the captain "That's her" as Aubrey passed, and I thought he would see if she was ok. Much to my shock, the captain started YELLING at her, raising his voice publicly to threaten her to never speak to his crew in such a way, and he could have her arrested, etc. Aubrey responded in disbelief, saying that he didn't give a damn about passengers' safety, to which the crew (captain, female flight attendant and tall male flight attendant) all LAUGHED and shouted "Maybe drink less next time."

3

I was absolutely appalled. The entire flight, the staff had jeopardized her safety by letting an intoxicated passenger fly, over-serving him alcohol and then ignoring blatant signs of harassment until a random stranger (me) demands she is moved. After deplaning I still saw 12B waiting for Aubrey, and was forced to shout at him to leave her alone and leave when he began approaching her. He eventually backed away, especially when an off-duty pilot who had been on the flight sitting two rows up stepped in as well. She was the one who approached the gate attendant to alert security and American Airlines customer service.

As I sat with Aubrey (I wanted to make sure she was taken seriously by your people and not seen as "the drunk girl"), she informed me of the worst possible occurrence—12B had forced himself into the bathroom with her and sexually assaulted her. I immediately asked if there were any flight attendants in the back of the plane, but I already knew they mostly had gathered up front the majority of the flight. You may ask (and certainly the police did), Why didn't she report it to a flight attendant? In a nutshell, she was in shock, still slightly intoxicated, and questioning things like "How am I supposed to tell my husband what happened?" The flight crew had not stepped in prior to this, so I don't blame her for not placing a lot of trust in their action to respond.

As the pilot exited the jet way, I approached him and informed him that not only was his public shouting totally out of line and the bullying of a passenger was unacceptable, he was acting on insufficient understanding of the entirety of the night. As I unfolded the many issues and transgressions of the previous five hours, his tone became more somber, and he kept asking why no one reported anything, to which I responded that I HAD (multiple times) but also did not feel safe drawing tons of attention to myself in fear of 12B's recourse. It is my obligation to alert crew on what I see and hear, which I did. It is not my job to put my safety at risk to mitigate a situation because flight crew purposefully choose to ignore it. The only flight attendant who did his job was the shorter male attendant in the back. The rest only made matters worse. And at the end of it all, I had to direct the pilot to apologize to Aubrey, as he wasn't going to do it on his own.

While this incident was somewhat addressed once we left the plane, and was documented by Chatesha Samsoondhar, American Airlines CSM on duty, I left the airport feeling that while this would continue to be an investigation with the Port Authority (to whom I provided a detailed official statement) and the FBI, it would get washed away by American Airlines without proper recourse or discipline towards those who allowed these events to happen and then exacerbated them by belittling the victim and supporting, essentially, rape culture. People pay (a lot) for your services; the least they can expect is for your staff to uphold their safety and dignity. On Flight 1280, you fell massively short of this.

While I expect a minimum of full reimbursement for all travel costs associated with what was one of the most disturbing flights of my life, I truly have no idea what the airline can do to repair the damage done to Aubrey, passenger 12A, for what was likely one of the worst experiences of her life. I expect that this letter sparks actions and revisions to your protocols and to the sensitivity training your flight crew receives. I demand a response describing the recourse being taken to right these many wrongs as well as confirmation of compensation. In the meanwhile, I will continue to communicate with appropriate

agencies and consumer groups to share these neglectful and despicable actions to hold American Airlines accountable.

J█████████

█████████

█████████@gmail.com